Okay, let's see what's going on. So we're ready on the first case, United States v. Perez. Mr. Hall. May it please the Court, Adam Hall for Alberto Santos Perez, the appellant. I request three minutes of rebuttal time. On August 22nd of 2022, Mr. Perez was arrested and interrogated by a DEA agent on suspicion of drug trafficking. Although the agent recited the Miranda warning, he didn't pause or seek or obtain an express waiver of the defendant's Miranda rights. Instead, he sought immediately to obtain a statement from Mr. Perez by using methods of coercion in his manner of interrogation as well as inducements, promises of leniency to induce a statement by Mr. Perez. These statements obtained by that DEA agent should have been suppressed as evidence and the district court's contrary conclusion was erroneous. Mr. Perez requests relief from this court in the form of a reversal of the determination of the district court. Beginning with the Miranda issue and whether or not it was waived, obviously, as I mentioned moments ago, there was no express waiver. So the government was burdened to demonstrate an implied waiver by the course of conduct of Mr. Perez. Moreover, that the waiver, express or implied, would be knowing involuntary on the part of Mr. Perez in the giving a waiver of his rights in giving of the statement. Regarding the knowing dimension, as the court's aware, its measure is and requires an awareness of the consequences of the decision to abandon a known right by Mr. Perez. And there are many factors cited by the government in its responsive brief that indicate that the waiver, if cited by the government, alleged by the government, was not a knowing one. First, no warning was given in writing and Mr. Perez wasn't given an opportunity to read the warnings prior to being called upon to waive them at the insistence of the DEA agent. What would you say your best case is on the waiver, the Best Town Circuit case that would support your no pause point? The case names aren't springing to mind immediately. I think the thing that supports most greatly the argument is this court's precedent regarding whether a waiver is knowing and the fact that many of those factors suggest that it's not knowing. Moreover, the cases cited regarding inducements and coercion tend to suggest that the waiver was not voluntary in the sense required. So in a sense, your coercion argument is part of the waiver analysis as well as the confession? That is correct. So not all of the coercion occurred prior to Mr. Perez making comments, which would be part of the government's argument for the course of conduct indicating waiver, but many were, which militate against the finding that would be necessary for a waiver, which that it was the voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception. Is your argument kind of a hard, because the agent failed to pause and continue the conversation, is, are you asking for a bright line rule that that was, you know, dispositive evidence of no waiver, or are we in a totality of the circumstances here? It would be nice if it was a bright line. I don't think, based on my reading of this court's case law, that it would support there being a bright line in failing to pause and ask whether there is a waiver. Certainly, I think an individual read a Miranda warning could, without sort of non-verbally or by conduct, communicate their intention to waive freely and voluntarily. That is not, however, what happened in connection with Mr. Perez's case. And at what point, under these facts, at what point in time, you know, did the government step over the line? If it's a totality, you know, I'm just looking at the sequence of the conversation. You know, when did it go from ambiguous to, you know, hard no? So, there are sort of two questions. One is, when did the waiver occur, and when was the interrogation such that it became, the statements became involuntary? And I think either one is going to be a problem for the government in terms of the suppression of evidence and would require a reversal. But I think the court's question is, okay, when, how do we know that there was no waiver, or at what point do we know that there was no waiver by course of conduct which would be voluntary? Certainly, Mr. Perez made a statement in this case. And certainly, he chose to form the words that came out of his mouth. But that is the case in every involuntary confession case. But can you pinpoint a time and say, at this moment, there was a violation, and then work backwards with the totality of circumstances and tell us why? But I don't know exactly when you contend that the violation occurred. So, the nature of the violation is that, and it's made difficult by the absence of any express waiver or invocation. So, the government is the one which is burdened to prove the waiver by course of conduct. And it's not clear to me from the government's argument when the government contends that waiver took place, other than the making of the first exculpatory statement on the part of Mr. Perez. But what is clear is immediately after the agent's recitation of the Miranda warning, the agent did not pause, and instead proceeded to immediately advise Mr. Perez of the severity of the charges that Mr. Perez was facing. But that's not a violation in and of itself. Certainly, I agree with that. But it is a comment of a coercive character, a comment tending to try and push in the direction of waiver the defendant into making a statement or statements against his own interest, contrary to the rights that had just been read to him. So, Mr. Perez, after being told he had the right to remain silent, was threatened with a lengthy incarceration and told that if he did cooperate, he might be, it was suggested to him, he might be released that day without any charges. He was told about his ability to challenge the evidence that the agent had collected against Mr. Perez, but that he would be in handcuffs in an orange jumpsuit with the discovery handed to him by his attorney, who would advise him, in the words of the agent, that he should talk now, that the agent telling Mr. Perez what an attorney would tell Mr. Perez should he seek to invoke his right to Miranda. So, so all of those... Are any of those statements standing alone, coercive? Like, you know, one statement saying, okay, that's, that's a violation? Or do we have to lump them together? I do think they have to be lumped together. I don't think any one of those statements is particularly violative. But on behalf of Mr. Perez, we agree with the government that the particularly egregious comments on the part of the agent were those in which the agent placed himself in the hypothetical role of Mr. Perez's attorney. And then, beyond doing that, tells Mr. Perez what advice the agent, as Mr. Perez's attorney, would give the agent. And it was very self-serving for the purpose of the agent's investigation into the case. Does it matter if a lot of those statements were accurate or even truthful? I think the court can weigh that in the totality of the circumstances. But if the historical function of the right against self-incrimination was sort of not to place the defendant in that sort of a situation to begin with, and as cited on page 27 of our brief, there was some extensive discussion of the abuses that led to the right against self-incrimination by all of the states, even prior to the founding of the federal government. They viewed the cases that had developed in the states prior to the development of that right as having abhorrent results where the accused would be browbeaten into giving incriminating statements and be cornered and end up in contradiction to their own prior statements. And they viewed that practice to be abhorrent and decided to ban it. So I think the question is for this court, and this sort of goes to the voluntariness issue as well, is does this case, do these sets of facts look like something more akin to what is a laudable confession, a sort of free-flowing voluntary narrative made by the accused, which was given to a law enforcement agent in order to exonerate sort of the moral sensibility of the defendant? Or does this look more like the abhorrent practice from the founding era where an accused is browbeaten and cornered and placed in a position which is untenable, effectively forced to give a statement? And the argument of Mr. Perez is... In the founding cases, did any of them include a warning by the officers that anything you say can be used against you and you have a right to remain silent, you have a right to an attorney? Did any of them involve that? They did not. So isn't that an important factor here? I do think that... I mean, the function of Miranda is to take out of an extrajudicial interrogation the component of coercion inherent in the context of that interrogation, the custodial interrogation. But this particular agent added additional... Well, number one, he undermined his Miranda warning by essentially immediately saying, you're in deep trouble and unless you cooperate with me, you're going to jail today, implying on the other side, you might be let go if you choose to talk to me today. But two, there are other coercive elements beyond just the fact of custody and the fact of interrogation against which Miranda was designed to guard, those things being inherently coercive. There were additional coercive elements placed by the DEA agent, for which I think the court must also account in deciding whether or not the statement given by Mr. Perez was voluntary. When you say confession, I just want to get the lay of the land. Are we just talking about Cisneros and Craneville? Because he denied the tapia, right? So the incriminating statements. And that's it, though. That's the universe of the incriminating statements or the sales or dealings with Cisneros and Craneville? The sales or dealings with Cisneros or Craneville, the pre-warning statement that he gave, which was the phone number which served as a connection to evidence of the criminal conduct, that would essentially be the area of the statements that are material. I see that I've gotten to the point of my rebuttal time, so unless the court has any additional questions, I'll resume counsel table. Mr. Brown? Good morning, Your Honors. James Brown for the United States. May it please the Court. Your Honor, this Court should affirm the District Court's finding that the defendant's Miranda waiver and his confession were both voluntary. The defendant, as this Court knows, received a valid Miranda warning. He was not subject to prolonged interrogation or detention. He was not particularly susceptible to coercion based upon his mental or physical characteristics. And the statements, the incriminating statements that he didn't make were apparently the result of calculation rather than coercion, as evidenced by the fact that he denied and minimized his involvement in this offense. How long was the pause between the Miranda warnings and the statements by the officers that he's in trouble, et cetera? First, we have three statements before the Miranda warning, and then we have the Miranda warning, and then we have a request by the agent that the defendant talk to him prior to giving the Miranda warning. And what was the time lapse between the Miranda warnings and the request? There was no time lapse. He read the Miranda warning, and then he said, you are my target, and then he proceeded into the, we would like you to cooperate with us. That's what happened. As we argue in our brief, that was a waiver by implication, or implied waiver, as the Supreme Court has found in the Bregui case, which we cite in our brief. The defendant, through his course of conduct, waived his Miranda rights by making his first exculpatory statement when he denied that he arrived at the scene to pick up the sham methamphetamine that the officers were trying to arrange for him to pick up. We identify the point of the waiver in footnote four on page 25 of our brief. But I'd like to point out one thing that's very important here. The defendant has actually waived the argument that his waiver was unknowing. In the district court and in his opening brief, he argued that the waiver was unknowing because it was coerced, because of the officer's interrogation methods. He never argued that he didn't understand the waiver based on the nine factors that we set forth in our brief. He never argued below, or in his opening brief, that he did not understand the waiver. Today, that's his principal argument. That's what he started out with. And then he cited the nine factors in our brief, and says that he didn't understand the waiver based on those nine factors. But the fact is that the district court, and that's a waiver. That's changing a theory to a new theory in a reply brief for the first time on appeal, and that's a waiver of that issue. But it really doesn't make any difference, because the district court made a factual finding that is not clearly erroneous. Supported by the evidence that the district court cited that the defendant's waiver and his confession were both voluntary. And that is a factual finding that has never really been challenged in this case with any sort of specificity. The defendant has never looked at that factual finding and said, the court was wrong. Clearly, this thing the court cited was wrong, was not supported by the record. It's not a permissible view of the evidence. He's never said that. That is a non-clearly erroneous actual finding. It's not, it doesn't have a legal component. Don't the courts say, yeah, the officers did these things. That's not improper coercion. That is coercion. Don't we have a legal issue before us also? Not just what actually happened, because that probably isn't an issue. Everything's recorded. So is it really just a factual finding for which review for clear error, or is there a legal component? Well, it's de novo review, and the court reviews the legal findings as the court knows. The court reviews the legal findings to see if they're correct, and then the court reviews the factual findings for clear error. And here the court made an underlying factual finding that his waiver was voluntary based upon his personal characteristics. He was 33 years old. He spoke English perfectly. He had a GED. He didn't have any mental problems, no substance abuse problems. That was the basis of the finding. But the argument about involuntariness is based on the conduct of the officer, not the characteristics of the defendant. And even if he satisfied all those characteristics that you just mentioned, if the officer were really abusive, at some point you would concede that it's involuntary, wouldn't you? Yeah, that would be the legal piece of the de novo review. And that gets into the second issue, which we call issue 2B, which goes to the voluntariness of the confession, as opposed to the voluntariness of the waiver. So I'd like to talk about that. And that, again, is de novo review. The court reviews the factual findings for clear error. We have a non-clearly erroneous factual finding that the defendant voluntarily confessed. The court considered all of the so-called coercive factors that the defendant talks about. The first one, probably one of the main ones, is this promise of leniency issue. The only offer made by the agent was that if you work with us, you can help yourself out. That was the offer. That is a vague, nonspecific, noncommittal assurance, limited assurance that this court has found to be a permissible interrogation tactic. We appoint the court to the United States v. Rodebaugh decision as probably the closest decision we have. It's probably our best case for this issue. And that is where the officer said, if you work with us, we'll go easy on you. This court found that in the Rodebaugh case to be a permissible interrogation tactic. And our case is similar. The officer basically said, if you work with us, you can help yourself out. There's really not a distinction in the Rodebaugh case. But, you know, Mr. Hall conceded that any one of these standing alone would probably not be coercive. So, you know, it's like reasonable suspicion. We're looking at the totality of the circumstances. And so it just wasn't that statement. Some courts, I don't think our circuit's taken a position clearly yet that separation from family or children can be coercive. You know, here you've got a cascading series of inducements, promises. At some point, those could be coercive. The question here is whether they became coercive. You know, that's a fair point. And that goes to the court's point about the totality of the circumstances. And that's why we dealt with every single point that he made in our briefing. The court mentioned the separation from family comment. And the comments were something like, you have four kids. If you go to jail, you'll be separated from your kids. It was something like that. And this court, as a matter of fact, in our 28-J letter, this court has found that such promises are not inherently coercive or do not necessarily render confession involuntary. That's the little case, which we cite in our 28-J letter, 119F4, page 776, 10th Circuit, 2024, where the court, where the officer in that case expressed regret the idea of the defendant and his son being separated indefinitely if the defendant was booked on a first-degree murder charge. And this court said that that did not weigh heavily for a finding of involuntariness under the circumstances, including that the defendant was calm and level-headed throughout. So that's basically similar to our case. We think the same rationale applies. And in support of that finding, the court cited a First Circuit case, United States v. Jacques, which we also referenced in our 28-J letter. The third thing that the defendant relies upon is this idea that the officer inserted himself as the defendant's hypothetical attorney. We've acknowledged this was advisable. It was probably not the best practice. But at the same time, it wasn't necessarily coercive, and it wasn't enough to overbear the defendant's will and critically impair his capacity for self-determination. The agent testified that in making that comment, he was trying to explain to the defendant how this process would play out. And he was doing that in mind that two of the defendants, co-defendants in this case, had also cooperated. And his explanation is at Record Volume 1, page 181, where he was saying, what I was trying to relate to Mr. Perez is that most people, if they talk to us, either talk to us at that time where they agree to cooperate with law enforcement and help us further the investigation at a later time, much like what Mr. Cranbill did and Mr. Cisneros did in a proffer, an attempt to try to mitigate some sort of the charge that he or she could face. That's Record Volume 1, page 181. So that was not an advisable comment, but he was just trying to explain how this would play out. And in the officer's experience, the way this plays out 90% of the time is in order to get a sentence reduction, the defendant has to cooperate. And that's why he said, your attorney's probably going to tell you that you need to cooperate. That's real. That's not coercive, and it's not to overbear the defendant's will. Now, we think probably the best evidence that the defendant's will was not overborne was the fact that the defendant gave his statements that were apparently the result of calculation and not coercion. The defendant knew what was on the table. He knew he could help himself out if he cooperated, because that was the offer. If you cooperate, you can help yourself out. So he gave as minimal information as he could. He denied and minimized his involvement and gave the agent, yes, I dealt with this person on a couple of occasions for a pound each. I dealt with this other person on a couple of occasions for a pound each. And the agent, in his testimony, said that this was just denying and minimizing his involvement. That shows that his capacity for rational thought, his capacity to make a rational decision, was never critically impaired. He was strategically making limited statements in order to get a benefit. It just turned out to be not enough, because the officer knew it was not the truth. And we get that calculation versus coercion argument from the Roman Zarate case. As far as the accuracy of the agent's comments, was safety valve an issue in this case? I don't think he got safety valve. He got a 225-month sentence. Would he have been eligible for that? You know, that I don't know. And doesn't that matter, though? Because when we look at Young and we see what the agent told the defendant in that case, the court finds it important that the agent has misstated what the sentence would be, just probably clumsily. And this would be the same sort of thing, wouldn't it? He's saying to the defendant or to the arrestee, here's your chance. This is the only way you're going to get yourself a lower sentence. And that may have been inaccurate. Well, you know, that is not clear from the record. What is clear from the record is that he was charged under 841B1A, which is 10 to life. That's what the weight gave. And I think even given the amount of weight that he faced, we don't see how he could have gotten less than 10 years, given the amount of weight that he eventually faced in the PSR. Why not with safety valve? Well, safety valve just says the mandatory minimum is not applicable. But here he was facing a guideline sentence of over 200 months, which is basically double the 10-year sentence. I don't think even with safety valve he could have gotten below. Safety valve just gives the court discretion to go below the 10-year. And there's no evidence here that the court would have exercised that discretion. Well, I guess what it illustrates, it may not be the be-all, end-all, but what it illustrates is the problem, as does U.S. v. Young, with turning agents loose to be discussing legal principles and the hazards that that entails. Well, you know, that's a fair point. But at the same time, Your Honor, the penalty is relevant in any type of situation where you're trying to get a defendant to cooperate. And an agent cannot be held to the standard of a lawyer. You know, if it's a comical misstatement of the penalty, that's one thing. But if it's something that fits with what's written in the statute book, that's another. And that's what happened here. And given the total amount of weight, we don't see how he could have gotten below 10 years. I mean, there's no reason for the court to have gone below 10 years based on what he pled to. So, you know, that's a fair point. But also, Young involved other things. In the Young case, the officer, and we talk about the totality of circumstances. In the Young case, the officer misrepresented how the interrogation system works. He said, you can physically buy down your time with every truthful statement. He also said, I have access to a federal judge, and I can tell the federal judge to do this or do that. And the misstatement of the penalty was a little bit exaggerated. It's not what he even could have faced. Here, this is what the defendant could have faced. Even with safety belt, he could have faced 10 years or more. So sometimes the coercion is just the evidence of the safety belt. Right, right. Which goes to our main point here. Is an officer advising a suspect of the realistic consequences for cooperating or not cooperating, number one, is not inherently coercive, and number two, cannot overbear defendant's will so as to impair his ability for self-determination. Just giving a defendant accurate, realistic information is not coercive. And that is just all that the officer did here. He gave him realistic and accurate information. And that's the case that this court is facing today. I see my time's up. I'll retire if the have any further questions. Thank you. We'd ask the court to refer him. Thank you. Mr. Hall, you have a little time left. So I'll begin with the government's argument of waiver on the sort of knowing dimension of the Miranda requirement. So we disagree with the fact that it's waived. I think if the court reviews our opening brief, there's a discussion of the dimension of knowledge with respect to waiver of Miranda. In response, the government, in its responsive brief, cited case law addressing factors relevant to that particular dimension that had not been expressly discussed in the opening brief, but those factors were discussed in the reply brief. I think there was adequate opportunity, both at this argument previously for the full play of the issue to come to the fore and we argue against. Well, the fact that they put it in your reply brief so they have an opportunity to raise an oral argument doesn't cut it. Well, but it was based on... It was either in your opening brief or it was waived. Isn't that really the test? That's the typical rule, although in a recent case, the McBride case, this court determined that it is not bound strictly by that if the sequence is as I have just discussed. We're not bound. You're bound. I understand that as well, Your Honor. What about waiver in the district court? By not addressing the knowing component? Yes. I do think that the gravamen of the defendant's challenge is related to the voluntariness issue. And there is overlap between knowledge and voluntariness that's at play in this case. And the cases typically speak to the elements of coercion and intimidation. And I do think that those standing on their own are sufficient to establish the involuntariness of the waiver in the absence of a waiver of Miranda rights. I do also want to, as I'm running out of time, address the issue of the promise of leniency. The government's characterization is the agent's promise of leniency was akin to just a vague promise. You can help yourself out. Or two, a promise akin to, I'll tell the prosecutor about your assistance in the cases cited by the government. That's not what the district court, I think, correctly found. At page 11 of the district court's opinion, the district court says the agent represented to Perez that he, the agent, had spoken with the prosecutor who informed the agent he could take it as far as he wanted to go. The agent later explained that he had permission to take Perez to jail that day if he didn't give the agent anything actionable. The agent also suggested the opposite was true. If Perez gave something actionable, he could be released that day and not charged. That sort of inducement or promise is something, as a matter of both nature and degree, is different than the analogy given by the government. I see I'm out of time by 12 seconds, and I'll retire. Thank you, counsel. Cases submitted. Looks like you both can be excused.